UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NORBEY RAMIRO BOLIVAR,

    Petitioner,

v.                                         Case No.: 2:25-cv-01203-SPC-DNF

GARRETT RIPA *et al.*,

    Respondents,
_____/

## **OPINION AND ORDER**

Before the Court are petitioner Norbey Ramiro Bolivar's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 11), and Bolivar's reply (Doc. 12). For the below reasons, the Court grants the petition.

**A. Background**

Norbey Ramiro Bolivar is a native of Colombia. An immigration judge ordered his removal on April 8, 2004, and he was removed the following month. Bolivar later reentered the United States. On July 13, 2015, the Department of Homeland Security ("DHS") reinstated the removal order. Bolivar expressed fear of returning to Colombia, and DHS commenced withholding-only proceedings. On January 14, 2016, an immigration judge granted withholding of removal to Colombia. DHS released Bolivar on an order of supervision because removal was significantly unlikely in the reasonably foreseeable future.

On December 7, 2025, Bolivar reported to an ICE facility as required by the order of supervision. ICE revoked his release and re-detained him. Bolivar claims he was not provided with a warrant, a reason for his re-detention, or an opportunity to be heard. He also claims the notice of revocation of release provided to him was not signed or dated. Bolivar's attorney confirms the claim in an affidavit—she testifies that she visually inspected the notice during two video calls, and that it contains no signature or date. The respondents have submitted a copy of the notice purportedly signed by Assistant Field Office Director Zoelle Rivera. (Doc. 11-6). The Court reviewed three notices of revocation of release forms filed in other cases and purportedly signed by Zoelle Rivera.[1] The signature in this case does not match any of the others. In fact, none of the signatures on any of the four forms resemble each other.

Bolivar challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and *Zadvydas v. Davis*, 533 U.S. 678 (2001).

---

[1] *Valdes-Santovenia*, M.D. Fla. Case No. 2:25-cv-1063-JES-DNF (Doc. 8-4); *Beltran v. Ripa*, M.D. Fla. Case No. 2:25-cv-1174-SPC-NPM (Doc. 6-5); and *Andino Gonzalez v. Noem*, M.D. Fla. Case No. 2:25-cv-1176-SPC-DNF (Doc. 10-3).

## B. Jurisdiction

Before addressing the merits of Bolivar's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Bolivar does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Bolivar challenges the legality of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Bolivar's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

### C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Bolivar's petition is premature because his current detention has not exceeded 90 days. They assume the 90-day presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 90 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents argue the spirit of *Zadvydas* is to prevent prolonged detention. That is not quite right. The *Zadvydas* framework explicitly guards against *indefinite* detention. 533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens…would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation"). If the government can establish a significant likelihood of removal in the reasonably foreseeable future, post-removal detention—even prolonged detention—is lawful. Otherwise, the government can keep tabs on the noncitizen through reasonable conditions of supervision while it continues removal efforts. If

removal becomes likely, the government can detain the noncitizen while it irons out the details.

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Bolivar has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE made that determination when it released Bolivar in 2016. (*See* Doc. 11-6 at 1) ("You were released on January 14, 2016, because there was no significant likelihood of removal in the reasonably foreseeable future"). The government has stated its intention to remove Bolivar to Mexico, but they have produced no evidence that removal to Mexico is feasible. There is no indication on the record that Mexico is generally willing to accept Colombian nationals from the United States, or that U.S. officials have contacted Mexico about accepting Bolivar specifically.

### D. Conclusion

The Court finds no significant likelihood Bolivar will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*, but he remains subject to the terms of the order of supervision. If removal becomes likely in the reasonably foreseeable future, DHS can detain Bolivar to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533

U.S. at 680. Bolivar's claims regarding the process used to revoke release are moot.

Accordingly, it is hereby

**ORDERED:**

Norbey Ramiro Bolivar's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Bolivar within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on January 14, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1